**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

STANLEY LUCKETT,

    Plaintiff,

*v.*

UNITED STATES OF AMERICA,

    Defendant.

_____/

CASE NO. 08-CV-13775

DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS AND
FOR SUMMARY JUDGMENT**
(Doc. 7)

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion to dismiss and for summary judgment be **GRANTED.**

**II.  REPORT**

    **A.  Introduction**

Plaintiff Stanley Luckett is a federal prisoner who is currently incarcerated at the Federal Medical Center in Milan, Michigan. On September 3, 2008, Plaintiff filed this *pro se* action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), claiming that the Bureau of Prisons ("BOP") failed to properly protect Plaintiff from an assault and battery by another inmate wherein Plaintiff's ear was bitten off and further failed to provide proper medical care following the incident. On November 7, 2008, United States District Judge George Caram Steeh referred all

pretrial matters to the undersigned magistrate judge. (Doc. 6.) Defendant filed the instant motion to dismiss and for summary judgment on January 20, 2009. (Doc. 7.) After extensions of time were granted, Plaintiff filed his response on April 20, 2009. (Doc. 12.) Although the Court's scheduling order allowed Defendant to file a reply on or before May 4, 2009, none was filed. Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

Plaintiff's complaint avers:

On March 12, 2008, at approximately 1:00 PM, Plaintiff was attacked by another inmate, whom bit off Plaintiff's ear, and it fell to the floor. Plaintiff picked up the ear and went to health services, where medical staff told Plaintiff: 'you will not be seen until 1:30 PM . . . .

At 1:30 PM. physician Assistant, Mario Bayoneto began medical treatment by cleaning and stitching up Plaintiff's ear. Once the procedure was finished, Plaintiff asked P.A. Bayoneto: 'did you sew my ear back on?' Bayoneto stated: 'NO, that it could not be reattached.' Plaintiff then asked Bayoneto: 'what did you do with my ear?' P.A. Bayoneto stated: 'I threw it away.' Plaintiff then asked P.A. Bayoneto: 'why did you do that?' P.A. Bayoneto stated: 'it was no good and could not be reattached.'

Plaintiff then asked to speak to someone in charge. Plaintiff then spoke with James Zestos, where Zestos stated: 'it would do no good to sew the ear back on.'

(Compl., Doc. 1 ¶¶ 1-4.) On March 19, 2008, Plaintiff's stitches were initially removed by P.A. Pamaloy. (*Id.* ¶12.) However, because some stitches remained, on March 22, 2008, P.A. John Upp "removed the remaining stitches with a toenail clipper," despite the fact that "Plaintiff objected to the use of said toenail clippers." (*Id.* ¶ 13.) After Plaintiff complained to P.A. Pamaloy about P.A. Upp's use of toenail clippers, "P.A. Pamaloy then issued more antibiotics for an infections [sic] caused by the use of said toenail clippers." (*Id.* ¶ 14.) On March 25, 2008, "Plaintiff spoke with health services administrator, Mr. Navidad, about the toenail clipper incident,

and was told by Navidad: 'that the toenail clippers did not have to be sterilized.' Plaintiff then asked Navidad to put that in writing and he refused.'" (*Id.* ¶ 15.) Plaintiff asserts that the loss of a portion of his ear has caused him "psychological damage," that he "now suffers from anxiety, panic attacks, sleep disturbances, nightmares" and that he "has been horribly disfigured for the rest of his life." (*Id.* ¶ 23.)

Plaintiff alleges that the BOP: (1) breached its duty of "safekeeping and protection" of prisoners by "failing to monitor, patrol, [and] supervise the prison area w[h]ere Plaintiff was assaulted"; and (2) breached its duty to "provide proper medical treatment and care." (*Id.* ¶ 24.) Plaintiff seeks $600,000 in damages for "physical and psychological injury, pain, suffering, disfigurement, [and] scarring." (*Id.* at 6.)

    **C.**    **Motion Standards**

Motions to dismiss for lack of jurisdiction are properly brought under Federal Rule of Civil Procedure 12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) fall into two categories: facial and factual attacks." *Ashley v. U.S.*, 37 F. Supp. 2d 1027, 1029 (W.D. Tenn. 1997) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack challenges the sufficiency of the complaint itself." *Id.* "A factual attack, on the other hand, challenges the factual existence of subject matter jurisdiction." *Id.* Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must

be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D. Analysis & Conclusions

Defendant raises three possible grounds supporting its motion to dismiss and for summary judgment: (1) discretionary function exception to the waiver of sovereign immunity; (2) failure to comply with Michigan law regarding medical malpractice claims; and (3) failure to exhaust administrative remedies. (Doc. 7.) For the reasons stated below, I suggest that Defendant's motion is supported by the first two grounds but not by the third.

#### 1. Discretionary Function Exception - Failure-to-Protect Claim

"Before a suit may be maintained against the United States, the United States must consent to being sued." *Sharp v. United States*, 401 F.3d 440, 442 (6th Cir. 2005). The FTCA expressly waives the United States' sovereign immunity for suits "for injury or loss to property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where, the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The waiver of immunity is subject to exceptions, including the discretionary-function exception found in 28 U.S.C. § 2680(a). "If the discretionary function exception applies and Congress has not otherwise waived the United States's immunity, then we lack subject matter jurisdiction over the action." *Sharp*, 401 F.3d at 443. The Sixth Circuit explained the two-step procedure for determining whether the exception applies:

5

>We first consider whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. If so, the discretionary function exception does not apply because the employee had no rightful option but to adhere to the directive and thus there was no element of judgment or choice in the complained of conduct.
>
>If the challenged action is deemed discretionary, we proceed to step two of the analysis, in which we determine whether the conduct is of the kind that the discretionary function exception was designed to shield. In undertaking such an evaluation, we keep in mind that the discretionary function exception was designed to prevent courts from being required to second guess the political, social, and economic judgments of an agency exercising its regulatory function. Such judgments are not restricted to those made by an agency's policymakers, for it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case. We also consider the fact that [w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Id.* (quotations & citations omitted).

As Plaintiff notes (Doc. 12 at 3), 18 U.S.C. § 4042 mandates that the BOP "shall" "provide for the safekeeping, care and subsistence" as well as the "protection, instruction, and discipline" of inmates. However, the Sixth Circuit and others have held that these mandates leave to the BOP's discretion how to accomplish the goals and, thus, that the mandates are not sufficiently specific to render the discretionary function exception inapplicable. *See Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004); *Santana-Rosa v. United States*, 335 F.3d 39, 41-45 (1st Cir. 2003); *Cohen v. United States*, 151 F.3d 1338, 1342-43 (11th Cir. 1998); *Dykstra v. United States Bureau of Prisons*, 140 F.3d 791, 795-96 (8th Cir. 1998); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997).

Therefore, the first prong is satisfied and the question becomes whether the conduct is of the kind that the discretionary function exception was designed to shield. *Sharp, supra*. The Sixth Circuit has held that the BOP's policy decisions regarding how to protect inmates from the

potentially assaultive behavior of other inmates falls within the type of discretionary function the exception was designed to protect. *Donaldson v. United States*, 281 Fed. App'x 75, 78 (6th Cir. 2008).

I therefore suggest that Defendant's motion for summary judgment be granted as to Plaintiff's claim that the BOP failed to protect Plaintiff from assault.[1]

### 2. Medical Malpractice Claim

I note at the outset that Plaintiff has not submitted any medical opinion evidence to support his claim. Plaintiff cannot rely on "his own conclusory allegations" of medical malpractice to survive summary judgment; thus, the motion for summary judgment could be granted on this ground alone. *See Lambert v. United States*, 198 Fed. App'x 835, 839 (11th Cir. 2006) (affirming dismissal of medical malpractice claim under FTCA where plaintiff submitted only "his own conclusory allegations"). However, I will also address the argument raised in Defendant's motion.

Under the FTCA, the law of the place where the alleged act or omission occurred is to be applied; therefore, Michigan law applies in the instant case. 28 U.S.C. § 1346(b)(1); *Sellars v. United States,* 870 F.2d 1098, 1101 (6th Cir. 1989). Under Michigan law, initiation of a medical malpractice action requires that the plaintiff file a complaint and an affidavit of merit. *Young v. Sellers*, 254 Mich. App. 447, 451, 657 N.W.2d 555 (2002). An affidavit of merit "shall certify that the health professional has reviewed the notice and medical records supplied to him or her . . . and shall contain a statement of each of the following: (a) the applicable standard of practice or care; (b) the health professional's opinion that the applicable standard of practice or care was breached . . .; (c) the actions that should have been taken or omitted by the health professional or health

---

[1] I note that Plaintiff has not alleged any previous conduct by the inmate that assaulted him that would have placed the BOP on notice, constructive or otherwise, of any potential issues between the inmates. Instead, Plaintiff's statement of the facts states only that he was assaulted. (Doc. 1 at 3.)

facility in order to have complied with the applicable standard of practice or care; [and] (d) the manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." MICH. COMP. LAWS § 600.2912d(1).[2] "[T]he mere tendering of a complaint without the required affidavit of merit is insufficient to commence [a medical malpractice] lawsuit." *Scarsella v. Pollak*, 461 Mich. 547, 549, 607 N.W.2d 711 (2000) (*Scarsella II*).

In the instant case, Plaintiff has wholly omitted the requisite affidavit of merit; therefore, I suggest that Defendant is entitled to summary judgment on Plaintiff's medical malpractice claim.

### 3.     Exhaustion - Both Claims

Defendant asserts that Plaintiff has not properly exhausted his claim alleging negligent stitch removal because Plaintiff's administrative tort claim alleged only Defendant's negligent failure to reattach his ear. (Doc. 7 at 10; Ex. A.)

It is settled law that where administrative exhaustion is prescribed by statute as a prerequisite to the district court's jurisdiction, as is the case with the FTCA, 28 U.S.C. § 2675(a),[3] a failure to exhaust precludes the court from taking jurisdiction of the case. *See Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (stating that "we have held that the failure to file a timely administrative claim under the FTCA bars federal jurisdiction"). *See also* 5A CHARLES

---

[2]Michigan law also requires that a notice of intent must be given to the health professional or health care facility not less than 182 days before the action is commenced. MICH. COMP. LAWS § 600.2912b.

[3]The relevant provision of this section provides that:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

8

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed. 1990). "'The FTCA's filing requirement is satisfied if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.'" *Slater v. United States*, 175 Fed. App'x 300, 306 (11th Cir. 2006) (quoting *Brown v. United States*, 838 F.2d 1157, 1159 (11th Cir. 1988)). "'By requiring this notice, Congress sought to ensure that the agency is apprised of the circumstances underlying the claim, so that the agency may conduct an investigation and respond to the claimant by settlement or by defense.'" *Id. Also compare Warrum v. United States*, 427 F.3d 1048, 1050 (7th Cir. 2005) (administrative claim for medical malpractice due to a failure to diagnose cancer, filed while claimant was still alive, was not sufficient exhaustion as to wrongful death claim, which did not accrue until claimant died); *with Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994) (administrative claim for negligence in surgery causing blindness placed government on notice of possibility of informed consent claim, thus, informed consent claim was properly exhausted).

There is support for Defendant's argument that only claims arising from the exact dates mentioned in the administrative claim are properly exhausted. *See Barnes v. United States*, 137 Fed. App'x 184, 188 (10th Cir. 2005). However, I am more persuaded by cases which focus on whether the claims and injuries suffered on dates different from those specifically alleged in the administrative claim are reasonably within the notice provided in the administrative claim. For example, in *Southern v. United States*, 503 F. Supp. 2d 829, 837 (W.D. Tex. 2007), the plaintiff's administrative claim alleged malpractice in failing to prevent the spread of Hepatitis C as a result of a colonoscopy performed on June 7, 2004. The colonoscopy was performed due to the findings made during a sigmoidoscopy done at the same Veteran's Administration facility on February 25, 2004. The court held that, "[g]iven the similar nature and risks of the procedures, their temporal

9

proximity, and the fact that one procedure led to the second, Plaintiff's claim regarding a possible injury suffered during the colonoscopy gave adequate notice that the injury could also have been suffered as a result of the flexible sigmoidoscopy." *Id.* *Accord Davis v. United States*, 430 F. Supp. 2d 67, 76 (D. Conn. 2006) (malicious prosecution claim including events occurring in May 2004 properly exhausted despite fact that May 2004 dates were not included in administrative claim); *Neuenswander v. United States*, 422 F. Supp. 2d 425, 438 (D. Vt. 2006) (malpractice claim regarding failure to properly treat chronic skin condition beginning in 1983 was properly exhausted even though administrative claim alleged failures to treat the same condition between 1998-2001).

I suggest that, in this case, Plaintiff's administrative claim provides even better notice than that given in *Southern*. Here, the claim concerns removal of stitches that were put in place during the emergency care specifically complained about in the administrative claim. Even the most remote event, the second removal of stitches, occurred only ten days after the initial treatment of Plaintiff's ear injury after the assault. In addition, I suggest that both the first and second removal of stitches are continuing stages in the treatment given as a direct result of the assault. *See Strohm v. United States*, No. 06-4139-SAC, 2007 WL 3120704, at *5 (D. Kan. Oct. 24, 2007) ("plaintiff's complaint includes dates and events which were not included in the administrative complaint, but the factual allegations of negligent care and treatment in the complaint which occurred after the events stated in the administrative claim are properly viewed as a continuing course of events which allegedly contributed to plaintiff's injuries"). Certainly, the first event (the ear injury treatment and placement of stitches) led to the subsequent events (the initial removal of stitches and second removal of stitches). *See Southern, supra.*

I therefore suggest that Plaintiff's claims regarding the emergency care given to him after his ear was injured as the result of the inmate assault, and his claim regarding the initial and second removal of stitches were all properly exhausted in the administrative claim. I therefore suggest that this ground does not provide support for Defendant's summary judgment motion.

### 4. Conclusion

I suggest that (1) Plaintiff's failure-to-protect claim falls within the discretionary function exception to the FTCA's waiver of sovereign immunity and therefore Defendant's motion should be granted as to that claim; (2) Defendant's motion should be granted as to the medical malpractice claim because Plaintiff has not submitted an affidavit of merit as required under Michigan law. Accordingly, I suggest that summary judgment be granted to Defendant and the case be dismissed with prejudice.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: May 20, 2009                         United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and was mailed by the U.S. Postal Service to the following non-ECF participant: Stanley Luckett # 10991041, Milan FCI, Inmate mail/parcels, P.O. Box 1000, Milan, MI 48160.

Date:  May 20, 2009                       By    s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder